LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**        (IN CHAMBERS)

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [219]

### I.   INTRODUCTION

Pending before the Court is Defendants Landmark Event Staffing Services, Inc. ("Landmark"), Peter Kranske, and Michael Harrison's (collectively, "Defendants") motion for summary judgment or, alternatively, partial summary judgment.  (Dkt. No. 219.)  Defendants move for summary judgment as to all claims brought by Plaintiff Contemporary Services Corporation ("CSC").  In CSC's First Amended Complaint, CSC alleges (1) misappropriation of trade secrets, (2) violation of the Computer Fraud and Abuse Act, (3) violation of the California Computer Data Access and Fraud Act, (4) intentional interference with prospective economic advantage, (5) civil conspiracy, (6) violation of California's Unfair Competition Law, (7) unjust enrichment, (8) aiding and abetting, and (9) breach of contract.  (Dkt. No. 74 (First Am. Compl. ("FAC")).)  For the following reasons, the Court **GRANTS** Defendants' motion.

### II.   BACKGROUND

#### A. The Parties

Plaintiff CSC is a California corporation with its principal place of business in Northridge, California.  (FAC ¶ 1.)  CSC provides event-staffing, security, and crowd-management services for concerts and sporting events throughout the United States. (FAC ¶ 13.)  Although the parties dispute exactly how CSC was formed, it is undisputed that the company grew rapidly in the 1980s due to the work of CSC's two principals,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

Kranske and his then-partner Damon Zumwalt.  (Pl.'s Statement of Genuine Disputes of Material Fact ("SOF") ¶¶ 1, 2, 35.)[1]  Event Services America ("ESA") is an affiliate of CSC that does business in Florida under the name "Contemporary Services Company." (SOF ¶¶ 32–33.)  ESA is not a party in this litigation.

Defendant Landmark is a Delaware corporation with its principal place of business in Irvine, California.  (Answer ¶ 2.)  Landmark also provides security and crowd-management services and directly competes with CSC.  (Answer ¶ 23.)  Defendant Kranske founded Landmark and serves as the President and majority owner of Landmark. (Answer ¶ 3.)  Kranske formerly co-owned CSC and worked for CSC for thirty-eight years.  (Answer ¶ 3.)  Defendant Harrison serves as the Executive Vice President and General Counsel of Landmark.  (Answer ¶ 4.)  Harrison is also a former Vice President, General Counsel, and Senior Vice President of CSC.  (Answer ¶ 4.)

**B. Factual Background**

This case arises out of the alleged theft and misappropriation of CSC trade secrets by Grant Haskell, a former CSC employee who now works for Landmark as its Vice President of Operations.  (FAC ¶¶ 9–10; Answer ¶ 10.)  CSC alleges that Defendants colluded prior to Haskell's departure from CSC to obtain protected and confidential information from CSC in order to gain an unfair advantage in the private security and event-management market.  (FAC ¶¶ 39–48.)  Further, CSC claims that Haskell and Defendants have unlawfully solicited CSC's employees, (FAC ¶ 56), and that Defendants have unlawfully solicited CSC's customers and potential customers, (FAC ¶ 64).  These allegations are all linked to the purported theft and misappropriation of CSC's trade secrets by Haskell and Defendants.  (FAC ¶¶ 57–63; 65–77.)

Prior to the initiation of this lawsuit, CSC, Haskell, Kranske, and Zumwalt have litigated claims related to the underlying facts in other jurisdictions.  First, after CSC fired Kranske in 2005, Kranske filed a lawsuit against Zumwalt in the Superior Court of California, County of Los Angeles for alleged refusal to pay Kranske his ownership

---

[1] Because the paragraphs are numbered consecutively in both parties' separate statements of facts, (Dkt. Nos. 263, 291), but are not provided all in one document, the Court will refer to the various factual allegations provided in the parties' separate statements of facts collectively as "SOF."

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | | Date | September9, 2014 |
|---|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | | |

interest in CSC.  (SOF ¶ 274; Kranske Decl. ¶ 3.)  Zumwalt then filed a cross-complaint against Kranske for negligence, willful misconduct, and breach of fiduciary duty.  (Mot. at 3:21–23.)  The parties eventually settled this matter in March 2006.  (SOF ¶ 274.)  The settlement allowed Landmark to compete with CSC.  (Kranske Decl. Ex. A ¶ 6.)

Approximately five months later, CSC filed a lawsuit against Haskell in the Superior Court of Washington, King County.  (SOF ¶ 422.)  In the action (the "Washington Action"), CSC asserted six causes of action against Haskell for (1) injunctive relief; (2) misappropriation of trade secrets; (3) breach of confidential relation or duty of loyalty; (4) tortious interference; (5) unfair competition; and (6) breach of employment agreement.  (Bolasina Decl. Ex. A.)[2]  These claims were all based on Haskell's alleged theft of CSC's trade secrets when he left CSC.  (Bolasina Decl. Ex. A.)  The case terminated in a consent judgment on March 19, 2009.  (Bolasina Decl. Ex. N.)[3]

### C. Procedural Background

CSC filed its initial Complaint on June 2, 2009.  (Dkt. No. 1 at 5.)  Defendants then removed this action to the Central District of California on June 9, 2009, and the case was assigned to the Honorable Andrew J. Guilford.  (Dkt. No. 1.)  On June 26, 2009, Defendants filed a motion to dismiss, in which Defendants raised a number of issues as bases to dismiss CSC's Complaint, including res judicata and collateral estoppel.  (Dkt. No. 16.)  Judge Guilford granted Defendants' motion on July 31, 2009, finding that the Washington Action barred CSC from relitigating its claims in this matter, and declining to consider Defendants' other arguments.  (Dkt. No. 32 at 5.)

On October 27, 2011, the Ninth Circuit Court of Appeals reversed this decision, finding that "the alleged actions of Landmark and the other defendants in authorizing Haskell's conduct and subsequently utilizing CSC's proprietary information are separate from and additional to those of Haskell in initially misappropriating the information.

---

[2] Courts may take judicial notice of orders issued in other court proceedings.  *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).  The Court therefore takes judicial notice of this complaint.

[3] The Court considers this document solely for the purpose of establishing the manner and date of termination of the Washington Action.  As Defendants note in their objections to CSC's separate statement of facts, settlement offers are inadmissible as evidence of liability or fault.  Fed. R. Evid. 408(a).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

CSC could have, but need not have, brought all claims in the Washington action." *Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*, 455 F. App'x 760, 760–61 (9th Cir. 2011). The Ninth Circuit then remanded the case for further proceedings consistent with its opinion. *Id.* at 761.

On January 13, 2012, CSC filed its First Amended Complaint, which remains the operative complaint in this matter. (Dkt. No. 74.) The case was then assigned to this Court on May 2, 2013. (Dkt. No. 128.) On October 8, 2013, both parties stipulated to continue pretrial and trial dates from October 8, 2013 to October 7, 2014. (Dkt. No. 154.) On February 14, 2014, CSC sought leave from the Court to file a Second Amended Complaint, (Dkt. No. 159), which this Court denied on March 26, 2014, (Dkt. No. 169). On July 16, 2014, Defendants filed the instant motion for summary judgment. (Dkt. No. 219.) CSC opposed the motion on August 14, 2014, (Dkt. No. 251), and Defendants replied on August 25, 2014, (Dkt. No. 289). The Court then heard oral argument by the parties on September 8, 2014.

## III.   REQUEST FOR JUDICIAL NOTICE

Both parties have requested that the Court take judicial notice of various documents in support of their papers. Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

### A. CSC's Request for Judicial Notice

CSC has requested that the Court take judicial notice of various court filings from (1) the Washington Action; (2) the Kranske lawsuit against Zumwalt in the Superior Court of California, County of Los Angeles; and (3) the Ninth Circuit appeal of the order dismissing Plaintiff's case in this matter.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

### 1. Documents from the Washington Action

CSC asks the Court to consider eight documents from the Washington Action, *Community Service Corporation v. Haskell*, Case No. 06-2-10 32584-2 SEA (King County, Wash. 2006). These documents include five declarations filed in that case, an order granting a motion to compel, a motion for summary judgment, and an order denying a motion for partial summary judgment. (Dkt. No. 261 at 2–3.)

As for the two court orders and the motion filed in the Washington Action, courts regularly take judicial notice of such filings in other court proceedings. *See Trigueros*, 658 F.3d at 987 ("In particular, we 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Boreno, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992))). Accordingly, the Court **GRANTS** CSC's request to take judicial notice of these documents.

With regard to the declarations, however, the Court is more restrained in the extent to which it can consider these documents. The Court may freely take notice of the existence of these documents as public records under Rule 201, but the Court cannot as readily take judicial notice of the *facts* contained in those declarations; rather, "there must be an independent basis for taking notice of the facts referenced in the declaration[s]." *Bass v. Cnty. of Butte*, CIV-S-02-2443 DFL/CG, 2004 WL 1925468, at *2 n.2 (E.D. Cal. Aug. 6, 2004); *accord Allen v. Pac. Bell*, 212 F. Supp. 2d 1180, 1192 (C.D. Cal. 2002) (stating that the court could take judicial notice of deposition testimony, trial testimony, and discovery from another case only for the purpose of acknowledging that the documents exist, and noting that "[i]f Plaintiff wants this Court to take judicial notice of certain facts contained in the documents, then Plaintiff must set forth precisely what facts contained in these documents he wants this Court to take judicial notice of, if any"). As the Ninth Circuit has made clear, "[f]actual findings in one case ordinarily are not admissible for their truth in another case through judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003). CSC has not provided the Court with its reason for submitting these declarations, nor has it identified precisely what facts, if any, it wishes the Court to take notice of from these documents. The Court will thus take judicial notice of these documents for the limited purpose of acknowledging that they exist.

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

## 2. Documents from the Kranske-Zumwalt Lawsuit

Next, CSC asks the Court to take judicial notice of two documents filed in the lawsuit filed by Kranske against Zumwalt in the Superior Court of California, Los Angeles County, *Kranske v. Zumwalt*, Case No. BC 344 982 (Los Angeles County, Cal. 2005). These documents include the complaint and the cross-complaint filed by the parties. (Dkt. No. 261 at 3.) Because these documents are public records as court proceedings, the Court **GRANTS** CSC's request. *See Trigueros*, 658 F.3d at 987.

## 3. Documents from the Ninth Circuit Appeal

Finally, CSC requests that the Court take judicial notice of two documents from the Ninth Circuit appeal that CSC filed after the Court dismissed its Complaint. These documents include Defendants' brief and the opinion reversing the Court's order. For the reasons stated above, the Court **GRANTS** this request. *See Trigueros*, 658 F.3d at 987.

## B. Defendants' Request for Judicial Notice

Defendants have requested that the Court take judicial notice of various documents that Defendants contend are public records. (Dkt. No. 224.) These documents fall into four categories: (1) certified copies of Landmark's Certificate of Incorporation and Certificate of Correction; (2) a copy of the Business Entity Detail for CSC from the website of the California Secretary of State, as well as the client page for CSC's Los Angeles office; (3) files and documents from the Washington Action; and (4) files and documents from the Kranske-Zumwalt lawsuit. (Dkt. No. 224.)

First, the Court may properly take judicial notice of certified copies of Landmark's Certificate of Incorporation and Certificate of Correction as public records that are not subject to reasonable dispute. *See McMichael v. U.S. Filter Corp.*, No. EDCA 99–182VAP, 2001 WL 418981, *8 (C.D. Cal. Feb. 23, 2001) (taking judicial notice of a certificate of incorporation filed in Delaware); *In re Teledyne Defense Contracting Derivative Litig.*, 849 F. Supp. 1369, 1383 (C.D. Cal. 1993) ("Plaintiffs' claim for negligent breach of fiduciary duty against the Directors is barred by the Corporation's Certificate of Incorporation (of which this Court may take judicial notice) . . . .").

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **SA CV 09-00681 BRO (ANx)** | Date | September 9, 2014 |
|---|---|---|---|
| Title | **CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL.** | | |

Second, the Court may also take judicial notice of the Business Entity Detail from the California Secretary of State. *See Rowland v. Paris Las Vegas*, 3:13-CV-02630-GPC, 2014 WL 769393, at *2 (S.D. Cal. Feb. 25, 2014) ("The content of records of administrative bodies are proper subjects for judicial notice under Rule 201(d)."); *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011) (taking judicial notice of the Business Entity Detail from the California Secretary of State's website of the Raytheon Company).

Defendants' next request concerns various documents filed in the Washington Action. These documents include the complaint, a motion for summary judgment, the opposition and reply papers to this motion, a settlement offer, the acceptance of that offer, and the final satisfaction of judgment. As documents filed in other court proceedings, the complaint and the motion for summary judgment (and accompanying briefs) are properly the subject of judicial notice. *See Trigueros*, 658 F.3d at 987. As discussed above, however, *supra* n.3, the Court takes judicial notice of the settlement materials from the Washington Action for the sole purpose of acknowledging their existence. The Court does not consider the settlement offers or agreement as evidence of fault or liability. Fed. R. Evid. 408.

## IV.   EVIDENTIARY OBJECTIONS

Because the Court may only consider admissible evidence in deciding a motion for summary judgment, both parties raise a number of evidentiary objections in response to the evidence submitted in support of and in opposition to this motion.[4] Most of both parties' objections are "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Doe v. Starbucks, Inc.*, No. 08–0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). The Court will therefore aggregate the parties' numerous objections into categories for expediency.

---

[4] Despite the fact that this case has been pending since 2009 and has been actively proceeding in this Court since 2011, the parties were apparently unable to complete discovery within the ordered timeframes. The result is that the Court is faced with evidentiary submissions, objections, and responses that span hundreds of pages and a dozen separate filings.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **SA CV 09-00681 BRO (ANx)** | Date | September 9, 2014 |
|---|---|---|---|
| Title | **CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL.** | | |

### A. CSC's Objections

CSC has filed evidentiary objections in response to almost every "fact" submitted by Defendants in their separate statements of facts. (Dkt. Nos. 249, 262, 285.) These objections fall into the following categories: (1) hearsay, (2) improper lay opinion, (3) misstatement of the testimony, (4) lack of competence, (5) relevance, (6) improper character evidence, and (7) failure to authenticate.

#### 1. Hearsay

First, CSC objects to a number of statements made in certain individuals' declarations or depositions as inadmissible hearsay. Rules 801 and 802 of the Federal Rules of Evidence generally prohibit admission of statements made out of court that are being offered to prove the truth of the matter asserted. Fed. R. Evid. 801, 802. The majority of CSC's hearsay objections are meritless. For example, Harrison's statements in his declaration that he told Haskell that Haskell was not to take documents from CSC are not being offered to prove the truth of the matter asserted—*i.e.*, that Haskell should not take documents from CSC. Rather, Defendants offer these statements as evidence that Harrison in fact made these statements to Haskell. Such statements are not hearsay, and they are relevant to the issue of whether Defendants colluded with Haskell to misappropriate trade secrets from CSC. With regard to CSC's few meritorious hearsay objections (such as its objections to statements alleging that Zumwalt told Kranske that the lawsuits were meant to punish people who left CSC for competitors, (SOF ¶ 263)), the Court does not rely on the objected-to statements, rendering CSC's objections moot. Accordingly, CSC's hearsay objections are **OVERRULED**.

#### 2. Improper Lay Witness Opinion Testimony

Next, CSC objects to a number of statements made by various declarants or deponents on the ground that the statements constitute an improper opinion by a lay witness. Rule 701 requires that non-expert witnesses restrict their testimony to opinions that are rationally based on their perception, helpful to understanding their testimony or to determining a fact at issue, and not based on specialized knowledge. Fed. R. Evid. 701. Much of the testimony alleged by Defendants to be improper opinion is based on the witnesses' personal observations, in which case the statements are admissible. To the

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

extent that the witnesses do present improper opinion testimony, the Court does not consider these opinions in coming to its conclusion.  Accordingly, CSC's objections on the basis of lay witness opinion testimony are **OVERRULED**.

### 3.  Misstatement of Testimony

CSC objects numerous times on the basis that Defendants' statement of facts misstates the testimony cited as support for those "facts."  The Court does not rely on Defendants' characterization of this testimony in coming to its conclusion, however, but instead refers to the evidence cited in support.  CSC's objections on this basis are therefore **OVERRULED** as moot.

### 4.  Lack of Competence

CSC next objects on the basis of "incompetence" for certain witnesses, presumably under the theory that they lack personal knowledge to make the statements presented in their declarations or depositions.  Rule 602 requires that a witness demonstrate personal knowledge as to any testimony he or she gives in order to lay proper foundation.  Fed. R. Evid. 602.  Most of these objections concern statements made by former CSC employees regarding the practices of CSC.  CSC claims that these witnesses lack personal knowledge to testify regarding CSC's practices after they left CSC.  But these statements do not only apply to the period of time after these former employees left CSC, and they may still have personal knowledge, based on their continued employment in the industry, of what CSC's practices were if these practices were common knowledge in the industry.  Nevertheless, to the extent that these witnesses make statements for which they lack personal knowledge, the Court does not rely on them in making its determination.  CSC's competence objections are thus **OVERRULED**.

### 5.  Relevance

CSC lodges relevance objections to the majority of Defendants' proffered undisputed facts.  To the extent that these "facts" are irrelevant, the Court does not rely on them.  Moreover, the Court notes that relevance is a very low threshold to overcome in determining the admissibility of evidence.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | | Date | September 9, 2014 |
|---|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | | |

U.S. 579, 587 (1993) ("[Rule 402]'s basic standard of relevance . . . is a liberal one."). Accordingly, CSC's relevance objections are **OVERRULED**.

### 6. Character Evidence

Next, CSC objects to a number of various witnesses' statements as improper character evidence. Rule 404(a) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). The statements to which CSC objects predominantly relate to CSC's (or its principals') alleged use of the litigation process for improper purposes. The Court does not rely on such statements. CSC's character evidence objections are thus **OVERRULED** as moot.

### 7. Authentication

Finally, CSC objects on the basis that several statements require authentication of public records to be admissible. Again, most of these objections relate to statements regarding CSC's or Zumwalt's litigation history or tactics, which the Court does not consider in making its determination. To the extent that the Court considers the parties' prior litigation matters, the Court relies solely on the documents of which the Court has taken judicial notice. The remaining authentication objection lodged by CSC relates to a PowerPoint presentation by Haskell on recruiting and training. (SOF ¶ 102.) CSC objects only that Defendants failed to provide testimony properly authenticating this evidence. CSC does not appear to dispute that this is actually the ninth document that CSC identifies as one of the purported trade secrets at issue, and the Declaration of Elaine W. Yu asserts that CSC produced this document in response to Defendants' discovery requests regarding CSC's alleged trade secrets. (Yu Decl. ¶ 7.) CSC's authentication objections are thus **OVERRULED**.

### B. Defendants' Objections

Defendants similarly lodge a number of objections to CSC's proposed statement of facts. (Dkt. No. 291.) These objections fall under the following categories: (1) relevance, (2) personal knowledge, (3) hearsay, (4) the Best Evidence Rule,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

(5) misstatement of testimony, (6) contradiction of prior sworn testimony, and
(7) improper use of settlement offers as evidence of liability.

### 1. Relevance

As to Defendants' myriad relevance objections, the Court does not consider any of
CSC's proffered evidence that is irrelevant or which creates a risk of undue prejudice or
of confusing the jury that substantially outweighs its probative value.  Fed. R. Evid. 401,
403.  Defendants' relevance objections are thus **OVERRULED** as moot.

### 2. Personal Knowledge

Defendants raise a number of objections to statements based on lack of personal
knowledge.  Indeed, some of these statements concern matters of which the declarant
would have no personal knowledge.  For example, whether and when "the NFL
discovered that Kranske engaged in misconduct," and whether this formed the basis of
any of the NFL's decisions regarding CSC, is outside the scope of Zumwalt's personal
knowledge.  (SOF ¶¶ 315–17.)  Defendants' objections on this basis are therefore
**SUSTAINED**.

### 3. Hearsay

Most of Defendants' hearsay objections do not pertain to actual "statements" made
out of court.  (*See, e.g.*, SOF ¶ 348.)  Those that do refer to a "statement" often are not
being introduced for the purpose of proving the truth of the matter asserted, but rather are
intended to demonstrate that certain individuals actually made the various statements
described.  (*See, e.g.*, SOF ¶¶ 351–52.)  These objections are thus **OVERRULED**.  The
Court does not consider these statements as evidence of the truth of the matter asserted.

### 4. Best Evidence Rule

Defendants also raise evidentiary objections based on the Best Evidence Rule,
which requires a party to provide the original document when it is being offered to prove
the content of the document.  Fed. R. Evid. 1002.  With the exception of Defendants'
objections to statements that do not actually refer to any documents, (*see, e.g.*, SOF

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

¶¶ 341, 365–66, 389–90, 455), these objections have merit.  For example, CSC makes
multiple references to Haskell's employment agreement with CSC for the purpose of
establishing the contents of that agreement, but CSC provides only deposition testimony
to support these assertions, rather than the agreement itself.  (SOF ¶¶ 346–48.)  CSC also
presents deposition testimony by Haskell about emails he purportedly sent to himself, but
CSC never provides the actual emails.  (SOF ¶¶ 358–60.)[5]  Defendants' objections on this
basis are therefore **SUSTAINED** as to CSC's statements regarding Haskell's
employment agreement and the emails that Haskell claims that he sent to himself.

### 5.  Misstatement of Testimony

Like CSC, Defendants object numerous times on the basis that CSC's statement of
facts misstates the testimony cited as support for those "facts."  The Court does not rely
on CSC's characterization of this testimony in coming to its conclusion, however, but
instead refers to the evidence cited in support.  CSC's objections on this basis are
therefore **OVERRULED** as moot.

### 6.  Contradicting Prior Sworn Testimony

Next, Defendants object to several statements made in the Declaration of Luis
Uribe, the branch manager for ESA, (Dkt. No. 258), on the basis that Uribe contradicts
his prior deposition testimony in his declaration.[6]  (SOF ¶¶ 399–402.)  "The general rule
in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit
contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d
262, 266 (9th Cir. 1991).  Such declarations are considered "sham testimony" and are
inadmissible.  *Id.* at 266–67.

Defendants argue that paragraphs 3, 4, and 5 of Uribe's declaration conflict with
his prior deposition testimony.  (SOF ¶¶ 399–402.)  For the most part, Uribe's statements

---

[5] CSC does, however, provide the "itemized list" referred to in SOF ¶ 371.  (Dkt. No. 255-2.)

[6] Defendants also object on this basis to one statement made in the Declaration of Jay Brock, but they
fail to identify any deposition testimony that it purportedly contradicts.  (SOF ¶ 394.)  Similarly,
evidence is not barred simply because it conflicts with *other* witnesses' testimony.  (*See* SOF ¶ 405.)
Accordingly, these objections are **OVERRULED**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

in his declaration do not conflict with his prior deposition testimony.  (SOF ¶¶ 399, 401–02.)  With regard to one statement, however, Uribe appears to contradict his prior deposition testimony regarding the training he had prior to creating a deployment workbook for ESA.  (SOF ¶ 400.)  In his declaration, Uribe states that CSC paid for him to attend an Excel instruction course to learn how to use the program and that, "[a]s a result of this instruction and my continuing efforts to revise and improve the deployment workbook, I was able to create an integrated deployment tool with [sic] that can be used for virtually any event that CSC staffs."  (Uribe Decl. ¶ 4.)  Yet in Uribe's deposition, he explicitly stated that he had "almost no training" when he created this workbook:

> Q.    So what computer training did you have when you created Exhibit 224?
>
> A.    Minimal.  I would say almost no training, just from trial and error on my part and asking others that may have been more knowledgeable.

(Yu Decl. Ex. T at T-236.)  He further testified that he consulted with an IT person regarding "basic Excel techniques," but that it was not with regard to creating this workbook.  (Yu Decl. Ex. T at T-236.)

Uribe's statement in his declaration that he was able to create this workbook "as a result of" this purported Excel instruction course that CSC paid for him to attend thus flatly contradicts his prior deposition testimony.  Accordingly, Defendants' objection on this basis is **SUSTAINED**.  *See Kennedy*, 952 F.2d at 266.

### 7.  Improper Use of Settlement Negotiations As Evidence of Liability

Finally, Defendants object to a statement regarding the settlement negotiations and agreement between Kranske and Zumwalt.  (SOF ¶ 425.)  As discussed above, *supra* n.3, the Court will not consider this as evidence of fault or liability.  Fed. R. Evid. 408.

## V.    LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.*  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.

Once the moving party has met its burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id.* at 587.  Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor).  A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file.  Fed. R. Civ. P. 56(c)(2).  Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials.  Fed. R. Civ. P. 56(c)(3).  Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment.  *Thornhill's*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

*Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## VI.   DISCUSSION

### A. Collateral Estoppel

At the outset, Defendants argue that CSC is collaterally estopped from litigating the issues in this case because they were already litigated in the Washington Action. (Mot. at 7:3–12:28.)  In response, CSC contends that Defendants' argument has already been rejected by the Ninth Circuit when it reversed the prior dismissal of CSC's case. (Opp. at 7.)  For the following reasons, the Court agrees with CSC.

In reversing the order dismissing CSC's case, the Ninth Circuit rejected Judge Guilford's finding that CSC's claims were barred by the entry of a consent judgment in the Washington Action against Haskell.  *See Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*, 455 F. App'x 760, 760 (9th Cir. 2011).  In doing so, the Ninth Circuit stated:

> We find . . . that the alleged actions of Landmark and the other defendants in authorizing Haskell's conduct and subsequently utilizing CSC's proprietary information are separate from and additional to those of Haskell in initially misappropriating the information.  CSC could have, but need not have, brought all claims in the Washington action.

*Id.* at 760–61 (citing *Seattle–First Nat'l Bank v. Kawachi*, 91 Wash. 2d 223, 226–27 (Wash. 1978)).  The Ninth Circuit then remanded the matter for further proceedings.

CSC argues that the Ninth Circuit ruling precludes Defendants from raising the issue of collateral estoppel because the Ninth Circuit rejected that argument, making it law of the case.  (Opp. at 7.)  As Defendants point out, however, the Ninth Circuit ruling reversed Judge Guilford's order, which by its own terms relied exclusively on the issue of res judicata.  Indeed, Judge Guilford's order states: "Defendants argue, among other

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

things, that this case is barred by the doctrine of *res judicata*.  The Court agrees, and *does not address Defendants' numerous other arguments supporting dismissal*."  (Dkt. No. 32 at 5 (emphasis added).)  Because the other arguments that Defendants raised in its motion to dismiss—including the issue of collateral estoppel—were outside the scope of this order, Defendants contend that the Ninth Circuit's reversal of that opinion does not preclude them from raising these issues now.

While Defendants' argument makes some intuitive sense, it is contrary to the "law of the case" doctrine as it has been developed by federal courts.  "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'"  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).  As courts have recognized, the scope of the doctrine "is limited: it 'applies only to issues that were decided in the former proceeding and does not pertain [to] questions that might have been decided but were not.'"  *Knotts v. United States*, 893 F.2d 758, 761 (5th Cir. 1990) (alteration in original) (quoting *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir. 1978)).  Nevertheless, while it does not cover issues undecided by the former proceeding, "the doctrine encompasses issues decided by '*necessary* implication' as well those decided explicitly."  *Id.*  Thus, the law-of-the-case doctrine precludes not only arguments that are explicitly rejected by a former proceeding, but also arguments that are *implicitly* rejected by that proceeding.  *Compare Trahan v. First Nat'l Bank of Ruston*, 747 F.2d 990, 991 (5th Cir. 1984) (per curiam) (holding that the law-of-the-case doctrine applied where a similar argument was made to the appellate court in a petition for rehearing and that petition was denied without comment), *with Holcomb v. United States*, 622 F.2d 937, 940 (7th Cir. 1980) (finding that the law-of-the-case doctrine did not apply to arguments "not presented" to the court).

As CSC notes, Defendants raised their argument regarding collateral estoppel in their appellate brief before the Ninth Circuit.  (Dkt. No. 261-11 at 78–79.)  In their brief, Defendants urged the Court to affirm the lower court's dismissal on alternative grounds if it found that res judicata did not bar CSC's claims.  In doing so, Defendants argued that "many of CSC's claims are barred by the doctrine of collateral estoppel since the Washington court summarily adjudicated all but four of the same purported trade secrets CSC sues upon here, and entered judgment for Haskell on CSC's claim that Haskell

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

wrongly solicited the Everett Events Center." (Dkt. No. 261-11 at 78–79.)  This is the same argument that Defendant asserts in the instant motion for summary judgment.

Because the Ninth Circuit was presented with Defendants' argument regarding collateral estoppel (supported by the excerpts of record), the Court finds that the Ninth Circuit rejected this argument by "necessary implication" in refusing to find that collateral estoppel provided an alternative ground for upholding the lower court's decision. *See Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 861 F. Supp. 889, 903 (N.D. Cal. 1994), *aff'd*, 83 F.3d 1111 (9th Cir. 1996) ("However, in reversing, the Ninth Circuit implicitly rejected this argument, for the argument would have afforded an alternative basis for affirming the district court's dismissal, and the court of appeals will normally affirm so long as there exists any alternative ground, fairly supported in the record, that would justify the district court's ruling."); *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1119 n.79 (C.D. Cal. 2013) ("As stated, the Federal Circuit implicitly considered and rejected this alternative basis for finding the first resistance means obvious, so the court is precluded from reconsidering it on remand."). Accordingly, the law-of-the-case doctrine precludes Defendants from raising their collateral estoppel argument in this motion.

**B. Misappropriation**

Defendants devote the bulk of their motion to arguing that CSC's misappropriation claim must fail because the documents allegedly misappropriated by Defendants do not meet the requirements of "trade secrets" under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*  To prevail on a claim under CUTSA, a plaintiff must demonstrate that "(1) he owned a trade secret, (2) the defendant acquired, used, or disclosed that secret through improper means, and (3) the plaintiff was damaged." *Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*, CV 13-06837 DDP PJWX, 2014 WL 3698317, at *7 (C.D. Cal. July 25, 2014) (citing *Cytodyn, Inc. V. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2008)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

### 1. CSC's Ownership of Trade Secrets

Defendants make two primary arguments with regard to the first requirement under CUTSA.  Specifically, Defendants argue that (1) CSC does not own all of its purported trade secrets, and (2) the documents at issue do not qualify as trade secrets.

### a. Whether CSC Owns All of Its Purported Trade Secrets

First, Defendants contend that CSC cannot prove that it owned some of the purported trade secrets at issue.  In support of this argument, Defendants claim that several of the documents at issue were created by ESA, and that these documents are therefore owned by ESA rather than CSC.  The parties particularly dispute whether CSC or ESA developed an Excel workbook.  In support of its argument, CSC presented declarations by Zumwalt and Mark Glaser, the Senior Vice President of Operations for both CSC and ESA.  (Dkt. Nos. 255, 260.)  Both men testify that CSC and ESA have an agreement that "all confidential operational materials, whether originated by or improved upon by ESA, are and remain the property of CSC."  (Glaser Decl. ¶ 5; Zumwalt Decl. ¶ 3.)  Although there remains a disputed issue as to whether ESA and CSC actually have such an arrangement, the declarations of the two companies' principals attesting to such an arrangement is enough to overcome CSC's burden at summary judgment.[7]

### b. Whether CSC's Documents Constitute Trade Secrets

Next, Defendants argue that the allegedly misappropriated information and documents do not constitute "trade secrets" as a matter of law.  Whether information constitutes a "trade secret" "would normally constitute a factual question."  *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1043 (N.D. Cal. 1990).  Nevertheless,

---

[7] Defendants also argue that some of the information at issue belongs to the client venues with whom CSC contracts, rather than to CSC.  (Mot. at 23–24.)  Relying on *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 85, 863 (Cal. Ct. App. 1994), Defendants contend that the "body of information" regarding how CSC runs events rightfully belongs to the client venues hosting events.  While this is an interesting theory, there is a disputed fact as to how much control client venues have over staffing levels at events, (SOF ¶ 181), and there is insufficient evidence in the record from which to conclude as a matter of law that the event staffing industry is analogous to the traffic reporting services discussed in *Metro Traffic*.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

"some types of information may not be a trade secret as a matter of law, and . . . summary judgment may be appropriate in cases where a party has failed to meet its burden of proof for the purposes of a summary judgment motion by generating through evidentiary submissions a genuine issue of material fact." *Id.* The Court will therefore consider whether, as Defendants contend, CSC's allegedly misappropriated materials cannot qualify as trade secrets as a matter of law. CUTSA defines a "trade secret" as information that "(1) [d]erives independent economic value . . . from not being generally known to the public . . . ; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

### i.   Whether CSC's Information Was Valuable Because It Was Not Generally Known to the Public

First, Defendants argue that the information and materials that CSC claims Defendants misappropriated were generally known to the public and therefore cannot constitute trade secrets.

### (1)   CSC Failed to Identify Its Alleged Trade Secrets with Sufficient Particularity

At the outset, the Court notes that CSC has made it very difficult to decipher precisely what information it claims constitutes "trade secrets." In its opposition, CSC never identifies for the Court exactly what Defendants purportedly misappropriated. Rather, CSC relies on vague allegations to support its misappropriation claim, such as asserting that Defendants took CSC's "library of operational documents," which CSC claims "include[ed] confidential documents and trade secrets." Nowhere does CSC specify what these trade secrets *contained in* CSC's "library of operational documents" are, nor can CSC in good faith claim that all of these documents, in and of themselves, constitute trade secrets.[8] In fact, CSC appears to be making a concerted effort to obfuscate the issue. In its separate statement, for example, CSC drops a footnote when

---

[8] This is not to say that an individual document taken from CSC's library of materials could not constitute a trade secret, but CSC cannot simply state, in conclusory fashion, that a "library of operational materials" is comprised entirely of trade secrets.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

responding to Defendants' proposed undisputed facts attempting to identify CSC's purported "trade secrets" at issue, in which CSC states the following:

> As to defendants' Uncontroverted Facts 94–116 [which purport to be the trade secrets at issue in this litigation, (*see* Mot. at 8)], CSC disputes that it ever characterized each of these documents as trade secrets. Rather, it identified them in response to defendants' interrogatory as the "trade secrets and other separate confidential and proprietary documents that are the bases of its claims."

(SOF ¶ 94 n.1.)  It is unsurprising that CSC chose to dispute Defendants' characterization of CSC's alleged trade secrets at issue.  What is surprising is that CSC made no attempt to clarify for the Court what exactly it is claiming the trade secrets at issue are.  CSC did not dispute Defendants' characterizations of most of the *documents* that are alleged to contain trade secrets, (SOF ¶¶ 94–116), but it never identified with particularity for the Court what information within these documents constituted trade secrets.

As the plaintiff alleging misappropriation of trade secrets, CSC was required to identify its alleged trade secrets at issue with "reasonable particularity."  *See* Cal. Civ. Proc. Code § 2019.210 ("the party alleging the misappropriation shall identify the trade secret with reasonable particularity"); *accord Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) ("A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993))); *Jobscience, Inc. v. CVPartners, Inc.*, C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery.").  CSC has failed to do so, and the Ninth Circuit has affirmed summary judgment before based on a CUTSA plaintiff's failure to identify trade secrets with sufficient particularity.  *See Imax*, 152 F.3d at 1164–65.

Nevertheless, Defendants have identified with particularity twenty-three documents that purportedly contain the trade secrets that CSC claims were misappropriated, which Defendants label as CSC California #1–23.  (Mot. at 8–11.) Despite its footnote in its separate statement clarifying that it never identified those

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

documents as containing the trade secrets in question, CSC does not appear to dispute Defendants' characterizations of these documents, making multiple references throughout its opposition to the "CSC California" documents. Accordingly, the Court will adopt these labels for ease of reference and clarity. The documents at issue are the following:

(1)   CSC's "By The Book" 2006 corporate meeting notebook ("CSC California #1");

(2)   PowerPoint slides ranking CSC's branch offices on various financial criteria ("CSC California #2");

(3)   PowerPoint slides describing CSC's employee benefits ("CSC California #3");

(4)   A PowerPoint presentation by Zurich on minimizing workers' compensation claims ("CSC California #4");

(5)   A PowerPoint presentation by Mesirow Financial on wearing proper footwear ("CSC California #5");

(6)   A PowerPoint presentation by Mesirow Financial on worker compensation claims ("CSC California #6");

(7)   A PowerPoint presentation by H. Ric Zazzi on licensing requirements of various states ("CSC California #7");

(8)   A PowerPoint presentation on disaster business recovery, disaster preparedness, and Hurricane Katrina relief efforts ("CSC California #8");

(9)   A PowerPoint presentation by Haskell on recruiting and training ("CSC California #9");

(10)   A PowerPoint presentation on sexual harassment ("CSC California #10");

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | | Date | September9, 2014 |
|---|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | | |

(11) A revenue and expense statement for the CSC Seattle branch for 2004–2005 ("CSC California #11");

(12) A Microsoft Excel deployment workbook from 2004 for the Everett Events Center ("CSC California #12");

(13) PowerPoint slides titled "New Supervisor Orientation CSC Seattle" ("CSC California #13");

(14) PowerPoint slides titled "CSC Seattle Group Orientation" ("CSC California #14");

(15) A sheet titled "Supervisor Briefing" ("CSC California #15");

(16) A sheet titled "Seahawk Staff Briefing" ("CSC California #16");

(17) Invoices to various venues ("CSC California #17");

(18) A document titled "Detail Historical Aged Trial Balance" ("CSC California #18");

(19) A document titled "Office Salaries" ("CSC California #19");

(20) A document titled "Everett A-Z Guide" ("CSC California #20");

(21) A document titled "Everett Events Center Bag Search Post Orders" ("CSC California #21");

(22) A document titled "Interview Questions" ("CSC California #22"); and

(23) A stack of documents consisting of forensic data reports, various Landmark deployment sheets, guidelines and business estimates, and additional deployment workbooks ("CSC California #23").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

### (2)   Whether the Information in CSC's Documents Qualifies as Trade Secrets

Based on CSC's references to these documents in its opposition, the Court will segregate these documents into the following categories: (1) documents containing customer information (CSC California #17, 18); (2) documents containing CSC financial information (CSC California #11, 19); (3) CSC's Microsoft Excel deployment workbook (CSC California #12); and (4) CSC's compilation of its operational materials (CSC California #1–10, 13–16, 20–23).

### (A)   Documents Containing CSC Customer Information

First, CSC identifies a payables ledger (CSC California #18), as well as invoices with CSC customer and sales information (CSC California #17).[9] (SOF ¶¶ 110–11; Yu Decl. Ex. C at C-655–77.) While this information does not necessarily constitute a trade secret, a number of courts have found proprietary information about customers to constitute a trade secret in various circumstances. *See, e.g.*, *Alderson v. United States*, 718 F. Supp. 2d 1186, 1198 (C.D. Cal. 2010) ("Generally speaking, the law of trade secrets protects customer lists . . . ."); *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 53 (Cal. Ct. App. 2014) ("[A] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a . . . list of customers."); *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (Cal. Ct. App. 1991) ("A customer list is one of the types of information which can qualify as a trade secret."); *Am. Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1324 (Cal. Ct. App. 1986) (describing the "wealth of case law holding that

---

[9] In their motion, Defendants argue that CSC did not identify any "customer lists" as part of its alleged trade secrets, citing SOF paragraphs 89 and 90 for this proposition. (Mot. at 8 n.5.) SOF paragraph 90 states that CSC failed to identify customer lists in its discovery responses. (SOF ¶ 90.) In response, CSC disputes this on the basis that "CSC identified the payable ledger the Washington court held to potentially be a trade secret." (SOF ¶ 90 (citing Bolasina Decl. Ex. J; Yu Decl. Ex. C-670–75).) Indeed, the "payable ledger" to which CSC refers is what Defendants identify as CSC California #18, which was titled "Detail Historical Aged Trial Balance." (SOF ¶ 111.) Thus, CSC is not precluded from alleging misappropriation based on customer lists to the extent that the lists to which they refer constitute the document Defendants call CSC California #18.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

customer lists can be trade secrets"). "Moreover, the mere fact that the information is not in a written list is not dispositive of sufficient particularity." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1215 (N.D. Cal. 2012).

Such information may constitute trade secrets even when the customer names are public. In *Brocade Communications*, for instance, the court rejected the argument that customer-related information, "including customer lists and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences," was not a trade secret simply because the customer names were public knowledge. *Id.* at 1214–15. In doing so, the court noted that the "additional information linking each customer to other confidential information such as the customer's buying patterns, product needs, and preferences . . . makes the information valuable and not generally known to the public." *Id.* at 1215. Moreover, this information regarding the customers' buying patterns and practices derives value from not being known by the public—"information about customers' preferences can aid in 'securing and retaining their business.'" *Id.* at 1214 (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 972 (C.D. Cal. 2011)); *accord MAI Sys. Corp.*, 991 F.2d at 521 ("The Customer Database has potential economic value because it allows a competitor like Peak to direct its sales efforts to those potential customers that are already using the MAI computer system."); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (Cal. Ct. App. 1997) (finding that compiled confidential customer lists were trade secrets with independent economic value "because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested").

The two documents identified by Defendants as CSC California #17 and 18 each contain information about CSC's customers and their buying practices and preferences. (Yu Decl. Ex. C at C-655–77.) While a jury could determine that this information does not constitute a trade secret, the Court is satisfied that there is a triable issue of fact as to whether these documents qualify as trade secrets.

### (B) Documents Containing CSC Financial Information

Next, CSC identifies financial information relating to CSC's sales revenues and employee salaries. (SOF ¶¶ 104, 112; Yu Decl. Ex. C at C-600–01 (CSC California #11),

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

678 (CSC California #19).)  Unlike with regard to the customer information, the Court finds that this information does not qualify as trade secrets as a matter of law.  First, CSC California #19 contains a list of office salaries.  (SOF ¶ 112.)  While private, salary and expense information does not have an independent economic value that it derives from not being known by the general public.  *See GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 427–28 (Cal. Ct. App. 2000), *disapproved on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 1154 (Cal. 2004).  In *GAB*, the court upheld the jury's finding that the plaintiff owned no trade secret in its information of its employees' salaries on the basis that "the information lacked the necessary element of independent economic value."  *Id.* at 428; *accord Cal Francisco Inv. Corp. v. Vrionis*, 14 Cal. App. 3d 318, 322 (Cal. Ct. App. 1971) ("'It (trade secret) differs from other secret information in a business . . . in that it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, . . . the salary of certain employees . . . .'" (alteration in original) (quoting Restatement (First) of Torts § 757 cmt. b)).  CSC's document detailing salary information is thus not entitled to protection as a trade secret because it lacks independent economic value.

Second, CSC California #11 is a revenue and expense report for the CSC Seattle branch for the 2004–2005 years.  (SOF ¶ 104.)  CSC does not provide the Court with any California or Ninth Circuit authorities regarding whether financial statements such as this may be considered "trade secrets" under CUTSA, and the Court has not found any.  More importantly, the Court does not find that this information derives any independent economic value from not being generally known to the public.  It may indeed be confidential information or have some intrinsic value, but in order to qualify as a trade secret under CUTSA, it must "have value to other businesses which are unaware of the information and which could put that information, if known, to beneficial use."  *Abba Rubber Co.*, 235 Cal. App. 3d at 19.  CSC has made no showing that the information contained in its revenue and expense report would benefit other businesses.

Accordingly, the Court finds that the financial documents identified as CSC California #11 and 19 do not constitute trade secrets as a matter of law.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

### (C)  CSC's Deployment Workbook

CSC California #12 is an Excel spreadsheet that CSC refers to as its "Deployment Workbook."  (SOF ¶ 105; Opp. at 8–9.)  CSC describes this as "a proprietary tool, a spreadsheet comprised of programmable formulas—which allows event managers to generate deployment sheets covering complex details unique to each event, such as the number of staff required for the event by position and location, number of radios, names of individuals, their designated position, a command post log, and a worksheet for incident reports, cost estimates for the event, etc."  (Opp. at 9 (citing SOF ¶¶ 391, 397, 402–04).)  While Defendants object to this characterization because CSC has not provided them with an electronic version of this program to prove that it has these functions, CSC does provide declarations from Luis Uribe and James Brock, the employees of CSC and ESA who have been responsible for modifying and improving the Deployment Workbook.  (Dkt. Nos. 253, 258.)  Each of these individuals has personal knowledge of the functions of the Deployment Workbook based on his experiences.  Although their testimony may be insufficient to convince a jury that the Deployment Workbook really performs these functions, the Court finds it to be sufficient at this stage.

Even assuming the Deployment Workbook performs these functions, however, it still does not qualify as a trade secret because CSC has not demonstrated anything in the spreadsheet that someone with common knowledge in the industry could not create.  "Proprietary ways of doing the same thing that others in the same field do are not trade secrets."  *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011).  Nor are "[i]deas or concepts . . . in and of themselves."  *Id.*; *accord Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221–22 (Cal. Ct. App. 2010) ("The design may constitute the *basis* for a trade secret, such that *information concerning it* could be actionably misappropriated; but it is the information—not the design itself— that must form the basis for the cause of action.").  And despite CSC's attempts to embellish upon the functions of the Deployment Workbook, it also concedes that other companies use deployment plans, and that these plans typically contain "'the positions worked during the day and who worked those positions' as well as where people are posted, how many people are to be posted."  (SOF ¶ 74, 81, 82, 84.)

Such information is undoubtedly highly useful to each individual company that uses its respective deployment plan, but the use of an Excel spreadsheet to compile such

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

information does not transform it into a trade secret.  *Cf. In re Schmidt-Henderson*, BR 09-15664, 2010 WL 4809125, at *7 (Bankr. W.D. Wash. Aug. 2, 2010) ("I conclude that none of these forms is subject to trade secret protection.  They are all forms that could easily be created by a person in the medical billing industry, some are merely excel spreadsheets . . . ."); *see also Agency Solutions.Com*, 819 F. Supp. 2d at 1017 ("General knowledge in the trade or special knowledge of those persons who are skilled in the trade are not trade secrets." (internal modifications and quotation marks omitted)); *Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198, 206 (Cal. 1952) (rejecting the notion that a "procedure for estimating the price of a new contract" constituted a trade secret because "any competitor in the business must consider all of the factors which enter into Aetna's computations"); *F. Rodgers Insulation, Inc. v. CM Firestop, Inc.*, D040154, 2003 WL 21481000, at *5–8 (Cal. Ct. App. June 27, 2003) (rejecting the contention that an "estimating program and spreadsheets, particularly their production rate component," could constitute a trade secret).[10]

Here, the components of the Deployment Workbook are common factors that are obvious to any competitor in the event staffing and security industry.  The elements that factor into the calculations in the Deployment Workbook—the "number of radios, names of individuals, their designated position, a command post log, and a worksheet for incident reports, cost estimates for the event," (Opp. at 9)—are necessarily elements that every company in the industry must consider.  The Ninth Circuit has made it clear that "[i]f information is commonly known to members of an industry, it is not considered a trade secret."  *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465–66 (9th Cir. 1990).  That CSC has created a particularly efficient manner of computing or organizing these elements does not make the process a trade secret.  *See Agency Solutions.Com*, 819 F. Supp. 2d at 1017.  Accordingly, the Deployment Workbook, identified as CSC California #12, does not constitute a trade secret as a matter of law.

### (D)  CSC's Library of Operational Materials

Finally, CSC claims that a number of documents in its compilation of operating materials encompass trade secrets.  This compilation includes a corporate meeting

---

[10] *See Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

notebook titled "By the Book," which includes a number of PowerPoint slides on various CSC operational matters (CSC California #1–10), as well as various CSC materials regarding training, hiring practices, and venue-specific policies (CSC California #13–16, 20–23). (*See* Opp. at 10.) CSC contends that these materials may properly constitute trade secrets because CSC spent significant time and money creating these materials, and because they represent "the corporate 'DNA' of CSC." (Opp. at 10–11.) While this may be true, however, this does not, in and of itself, make these materials "trade secrets." They still must derive some independent economic value from not being generally known to the public. *See* Cal. Civ. Code § 3426.1(d).

CSC focuses much of its argument on demonstrating that Defendants' materials are so similar to CSC's materials that Defendants must have appropriated them. (Mot. at 11–12.) But for purposes of determining whether these materials constitute trade secrets, whether Defendants actually appropriated them is irrelevant. In support of its argument, CSC relies heavily on *Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1090 (E.D. Cal. 2012). There, the court rejected the defendant's argument that all of the information in the allegedly misappropriated materials was readily available to the public, stating that such an assertion was "undercut by [defendant's own actions in this case. If the information is truly that readily available to the public, it raises the question of why it was necessary for defendant to surreptitiously download, retain, and funnel the Booking Forms and other PSI information to his new employer in the first place." *Id.* Here, however, the information in this compilation is limited to largely instructional materials that are designed to educate an audience on training, hiring practices, and venue-specific policies. (*See* Yu Decl. Ex. C at 19–599, 639–54.) The issue is thus not whether these materials are available to the public; rather, it is whether these materials, assuming they are *not* available to the public, derive some economic value from their confidentiality. And apart from emphasizing the amount of time and resources that it has spent in creating these materials and their importance to CSC, CSC does not specify anything unique about these materials to prove that they are not simply "proprietary ways of doing the same thing that others in the field do"—*i.e.*, instructing their employees. *Agency Solutions.com*, 819 F. Supp. 2d at 1017.

These materials present a situation analogous to the one considered in *Self Directed Placement*, in which the Ninth Circuit denied trade secret protection to an "employment counseling program" that included "some thirty-six elements" and

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

incorporated "'know-how' and 'negative know-how' attained through accumulated experience." 908 F.2d at 465. Finding that all of the elements of the program were "either already a matter of common public knowledge or completely disclosed to students taking the . . . course," the court reasoned that "[i]t would be absurd to permit [the plaintiff] to appropriate as his own 'secrets' common pedagogical and job search techniques which would be used in any job placement course." *Id.* CSC has not demonstrated that any of these materials contain elements that are not public knowledge. CSC cannot claim trade secret protection over the "common pedagogical . . . techniques" it has employed in creating basic training materials. *Id.*[11]

Accordingly, the Court finds that CSC's compilation of operational materials, identified as CSC California #1–10, 13–16, 20–23, do not qualify as trade secrets as a matter of law.

### ii.     Whether CSC Used Reasonable Efforts to Maintain Secrecy

Although Defendants' primary challenge to CSC's misappropriation claim is that CSC's materials do not constitute trade secrets, Defendants also argue that CSC failed to exercise reasonable efforts to maintain its information. (Mot. at 21–22.) "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *accord Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995) ("[A]n unprotected disclosure of the holder's secret terminates the existence of the trade secret."). Defendants argue that CSC has shared its information publicly, thus defeating any claim of trade secret protection over this information.

---

[11] During oral argument, CSC contended that this library of materials should receive trade secret protection as a compilation of materials—that it is, in essence, CSC's "recipe for success." While a compilation may constitute a trade secret if it derives some economic value from not being generally known to the public, there is nothing about CSC's compilation of instructional materials that renders it more valuable by being kept secret. Rather, what makes this library of materials valuable to CSC is that it appears to be an effective way to present its training, hiring practices, and venue-specific policies. As these are all common topics that would be covered by any event-staffing company's materials, however, CSC's library of materials is nothing more than a compilation of common information, which is not eligible for trade secret protection. *See Self Directed Placement*, 908 F.2d at 465.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

There is much dispute between the parties regarding the extent to which CSC and other members of the event staffing and security industry publicly share the information contained in the documents at issue here.[12]  For example, while it appears from the testimony of certain CSC employees that they do share at least some of their materials with the public, (*see, e.g.*, Dkt. No. 221-7 at 11–13 (Dep. of Mark Glaser, Senior Vice President of Operations for CSC)), these employees also make clear that they "wouldn't willingly hand stuff over to a direct competitor," (Dkt. No. 221-2 at 26 (Dep. of Lonnie Sutton, former employee of CSC)).  With regard to the documents including client information that this Court has found could constitute trade secrets, however, there is no evidence to suggest that CSC has disclosed this information to the public.  Defendants argue that CSC's customer lists are publicly available "on CSC's own website."  (SOF ¶ 90.)  In support of this contention, Defendants cite to the California Secretary of State's website's "Business Entity Detail" for CSC.  Indeed, this website includes various "client comments" regarding CSC.  (Dkt. No. 224-2 at 2–4.)  But it is not just the names of a few of CSC's clients that makes the information contained in these documents confidential and potentially worthy of trade secret protection.  Rather, as discussed above, it is also the evidence of those clients' "buying patterns, product needs, and preferences."  *Brocade Commc'ns*, 873 F. Supp. 2d at 1214.  And there is no evidence that CSC has shared that information publicly.

The Court thus finds that CSC has satisfied the first prong for establishing trade secret misappropriation with regard to the two documents containing proprietary customer information (CSC California #17, 18).

---

[12] The Court agrees with Defendants that the disclosure of CSC's alleged trade secrets to temporary or potential employees could terminate any protection CSC had in those materials.  Nevertheless, there are several disputed issues regarding both the extent to which CSC disclosed its materials to such employees and the precautionary measures that CSC took to protect against further disclosure of those materials.  (*See, e.g.*, SOF ¶¶ 155, 178, 213–14.)  However, the materials in question must first be trade secrets.  Given this Court's analysis of the trade secret issue, the Court need not to reach this issue.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

### 2. Defendants Did Not Acquire, Use, or Disclose CSC's Trade Secrets Through Improper Means

The next element of a CUTSA claim is that "the defendant acquired, used, or disclosed [the plaintiff's trade] secret through improper means." *Brian Lichtenberg*, 2014 WL 3698317, at *7. Defendants argue that Defendants cannot be liable for the alleged conduct of Haskell because Haskell was not acting within the scope of his employment with Defendants when he allegedly stole the information in question. Under the doctrine of respondeat superior, "an employer will not be held liable . . . for conduct that occurs when the employee 'substantially deviates from the employment duties for personal purposes' or acts out of personal malice unconnected with the employment, or where the conduct is 'so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 482 (Cal. Ct. App. 2003).

Defendants argue that they cannot be held liable for Haskell's conduct because Haskell necessarily acted outside the scope of his employment when he took materials from CSC. Specifically, Defendants claim that Landmark hired Haskell on the express condition that he would not take or use any materials from CSC. (Mot. at 26.) Indeed, Defendants proffer extensive evidence to support this notion. In Harrison's declaration, for example, he states:

> Before we agreed to hire him, and as a condition of Landmark employing him, I asked Mr. Haskell to confirm specifically in writing that he had not taken anything from CSC and that he had properly terminated any employment agreement with CSC. Mr. Haskell executed a declaration simultaneously to his execution of his Executive Employment Agreement which confirmed (under penalty of perjury) that he returned all materials to CSC and did not take any documents or other materials that might be considered proprietary or in the nature of trade secrets, including CSC employee lists or CSC client lists.

(Harrison Decl. ¶ 5.) Defendants also submit this declaration that Haskell signed, dated July 30, 2006, in which Haskell affirms:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

Upon resigning from CSC, under advice of my counsel, I returned all CSC materials, including equipment, written materials and electronic files, and notified CSC of such return.  I have not retained any materials of CSC that might be considered proprietary or in the nature of trade secrets by CSC. . . . I have not taken any CSC employee lists or CSC client lists . . . .

(Harrison Decl. Ex. B.)  Furthermore, Kranske communicated this prohibition in emails to Haskell before Landmark hired Haskell, stating, for instance, "Grant, we can't use csc's," referring to CSC's materials.  (SOF ¶ 452.)[13]

In response, CSC essentially argues that all of this evidence only corroborates its theory that Defendants authorized Haskell's alleged misappropriation.  According to CSC, the paper trail that Harrison and Kranske left, in which they clearly prohibit Haskell from taking anything from CSC, was an intentional act in anticipation of litigation.  (Opp. at 17.)  In support of this theory, CSC discusses the timeline of events between when Defendants began to talk to Haskell about working at Landmark and when Haskell allegedly began stealing CSC's materials.  CSC's timeline is as follows:

- In April 2006, Harrison visited Seattle (where Haskell worked), during which he saw Haskell.  (SOF ¶ 342.)

- In June 2006, Harrison again went to Seattle.  While Harrison was there, Haskell began emailing himself CSC material at home.  (SOF ¶¶ 357–60.)

- Shortly after Harrison's visit, Haskell told a CSC employee that he (Haskell) was going to move to Landmark.  (SOF ¶ 343.)

- Prior to Haskell's departure from CSC for Landmark, Kranske and Harrison each individually retained and paid for Landmark's attorney

---

[13] CSC also refers to other emails in its opposition, (Opp. at 17), but they are not discussed in SOF paragraph 452, nor does CSC point the Court to where else in the record it may find evidence of these emails. *See* Fed. R. Civ. P. 56(c)(3).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

to review Haskell's employment contract with CSC, which took place on July 5, 2006.  (SOF ¶¶ 361–65.)

- Also on July 5, 2006, Haskell downloaded 285 CSC files and folders from his CSC computer onto a USB device and then plugged that same USB device into his home desktop and his Landmark laptop. (SOF ¶ 366.)

- Kranske sent Haskell several emails in which he repeatedly stated that Haskell could not use anything from CSC in his work at Landmark in an attempt to cover his tracks.  (SOF ¶ 452.)

CSC paints a story of suspicion and conspiracy, which it colors with facts taken out of context and accompanied by CSC's dark narrative.  Although the Court is cognizant of its duty to draw inferences in CSC's favor as the non-moving party, these inferences must be reasonable and based on admissible evidence.  Plaintiff has no evidence whatsoever to demonstrate that these facts—such as Haskell being in Seattle at the same time as Harrison, or that Haskell downloaded CSC files the same day that he received legal advice from Landmark—are at all related.  The Court will not draw an inference based on a party's hunch.  And the Court will certainly not draw an inference of collusion and conspiracy based on an employer's evident attempts to prevent its employee from breaking the law.

Based on the evidence presented by Defendants, particularly Haskell's employment agreement and accompanying declaration, it is clear that Landmark communicated to Haskell that he was prohibited from taking any materials from CSC.  Absent unambiguous contradictory evidence by CSC, the Court finds that Haskell's alleged misappropriation fell outside the scope of his employment, and thus Defendants cannot be liable under the doctrine of respondeat superior.

Nevertheless, CSC also alleges a theory of direct liability against Defendants.  As CSC contends, "[e]mploying the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use."  *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (Cal. Ct. App. 2000).  "Use of a trade secret

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

*without knowledge* it was acquired by improper means, [however,] does not subject a person to liability unless the person receives notice that its use of the information is wrongful." *Id.* (emphasis added). Thus, for CSC to establish liability, it would have to demonstrate that Defendants knew that they were using misappropriated materials.

In support of its argument that Defendants possessed such knowledge, CSC argues that Harrison and Kranske both had CSC material on their laptops, that Landmark used CSC material in requests for proposals by clients, and that Defendants changed the metadata on CSC documents. That Harrison and Kranske had CSC material on their laptops and used CSC materials in requests for proposals does not, by itself, create an inference of knowledge. Surely they knew the contents of the documents they were using, but their possession or use of these materials does not demonstrate knowledge of their origin. CSC's allegation that Defendants changed the metadata on CSC materials, however, could create an inference of knowledge. Changing the metadata would require a conscious act, during which the user would presumably realize which name he was changing. And the fact that Defendants allegedly changed the metadata on a document that this Court has now determined does not contain trade secrets—the Deployment Workbook—does not dispel this concern: If Defendants noticed that one of the documents they were using originated from CSC, then this realization creates an inference that they knew other materials could have been taken from CSC.

Yet CSC mischaracterizes the testimony when it claims that "Defendants altered the *deployment.xls* file's document metadata to delete Luis Uribe's name as the author and to change the company name from 'CSC' to 'Landmark Event Staffing.'" (SOF ¶ 384.) The evidence CSC cites for this proposition is paragraph 27 of the Declaration of Allison Goodman, CSC's computer examiner, in which she states: "After the *deployment.xls* file was moved to Mr. Haskell's Landmark laptop, the document metadata was altered to remove Luis Uribe's name as the author and to change the company name from 'CSC' to 'Landmark Event Staffing.'" (Goodman Decl. ¶ 27.) By this statement's plain terms, however, Ms. Goodman is clearly referring to what she discovered on *Haskell's* computer, not on Kranske's or Harrison's. CSC thus provides no evidence that either Kranske or Harrison was the one who changed the metadata, nor that they knew that the metadata was altered. Without any evidence connecting this act to Kranske or Harrison, CSC cannot demonstrate that either of them knew that the materials were allegedly taken from CSC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

CSC has thus failed to provide sufficient evidence from which the Court could reasonably infer either that Haskell's alleged misappropriation fell within the scope of his employment with Landmark or that Defendants knew of Haskell's alleged misappropriation and continued to use CSC's materials.  CSC's claim for misappropriation therefore must fail.[14]

## C. CSC's Other Claims Also Fail

In addition to misappropriation of trade secrets, CSC alleges claims for:
(1) violation of the Computer Fraud and Abuse Act,[15] (2) violation of the California Computer Data Access and Fraud Act, (3) intentional interference with prospective economic advantage, (4) civil conspiracy, (5) violation of California's Unfair Competition Law, (6) unjust enrichment, (7) aiding and abetting, and (8) breach of contract.  Defendants argue that these claims are all preempted by CUTSA.  For the following reasons, the Court agrees as to all but CSC's breach of contract claim.

CUTSA "preempts, displaces, and supercedes all 'claims based on the same nucleus of facts as trade secret misappropriation.'"  *RSPE Audio Solutions, Inc. v. Vintage King Audio, Inc.*, CV 12-06863 DDP PJWX, 2013 WL 1120664, at *2 (C.D. Cal. Mar. 18, 2013) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (Cal. Ct. App. 2009)); *accord Mattel*, 782 F. Supp. 2d at 987 ("[C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.").  Thus, CUTSA "provides the exclusive civil remedy for conduct falling within its terms." *Silvaco*, 184 Cal. App. 4th at 236.

---

[14] Because the Court finds that CSC's misappropriation claim fails under this element, it need not consider Defendants' arguments regarding causation of damages.

[15] CSC does not address Defendants' arguments regarding the Computer Fraud and Abuse Act.  The Court may deem CSC's failure to address this issue as a concession that it is meritless.  C.D. Cal. L.R. 7-12.  Indeed, at oral argument, counsel for CSC conceded as much when he suggested that the Court should dismiss this claim, which is CSC's sole federal cause of action, and then remand the case to state court for lack of subject matter jurisdiction.  The Court therefore finds summary judgment on this cause of action to be appropriate.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

The Court has already determined that CSC's claims all arise out of the same common nucleus of facts.  (*See* Dkt. No. 169 at 7 ("The Court agrees with Defendants that CSC's original causes of action in its amended complaint all relate to the alleged misappropriation of trade secrets by Haskell and the departure of Haskell from CSC.").) Accordingly, these counts should be dismissed.[16]  Nevertheless, as CSC points out, CUTSA does not preempt "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, [or] (2) other civil remedies that are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(a); *accord Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (Cal. Ct. App. 2013).  Thus, CSC's breach of contract claim is not preempted by CUTSA, and neither are any of its claims that, "although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim."  *Angelica Textile Servs.*, 220 Cal. App. 4th at 506.

CSC's contract claim, however, is derivative of its other claims, because it rests upon Kranske's alleged breach of his contract obligation under the settlement agreement with Zumwalt to conduct his competing business "in a lawful manner."  (FAC ¶¶ 146–48.)  Because the Court has found that Kranske has not acted unlawfully, CSC's contract claim must fail.

CSC also argues that its unfair competition and intentional interference claims "are anchored, in part, in Harrison's violation of his ethical and fiduciary duties to CSC [as] its former counsel and VP."  (Opp. at 23 (citing SOF ¶ 471; Cal. R. Prof'l Conduct 3-300, 3-310).)  CSC goes on to assert that Kranske "used CSC contacts . . . he obtained while working at CSC to directly solicit customers for Landmark."  (Opp. at 24 (citing SOF ¶ 452).)[17]  Finally, CSC adds that its claims for unfair competition, unjust enrichment, civil conspiracy, and aiding and abetting remain viable because they are founded on the conversion of tangible property, rather than the misappropriation of information.  (Opp. at 24–25.)  But as Defendants correctly note, CSC has not pled any of these allegations in

---

[16] CSC also does not oppose Defendants' arguments with regard to the Computer Fraud and Abuse Act and the California Computer Data Access and Fraud Act.

[17] Although CSC cites SOF paragraph 452, the contents of that paragraph do not support this contention. (SOF ¶ 452 ("On July 25, 2006, Kranske sent an email to Haskell in which he said, referring to CSC's materials, 'Grant, we can't use csc's [sic].'").)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 09-00681 BRO (ANx) | Date | September 9, 2014 |
|---|---|---|---|
| Title | CONTEMPORARY SERVICES CORP. V. LANDMARK EVENT STAFFING SERVICES, INC. ET AL. | | |

its complaints.  (*See* Compl; FAC.)  Nor did CSC identify these as theories under which it would seek damages in its discovery responses.  (Yu Decl. Exs. E, F.)

"[A] court has discretion to refuse to allow a new theory in opposition to summary judgment." *Jefferson v. Chase Home Fin.*, C06–6510 TEH, 2008 WL 1883484, at *5 (N.D. Cal. Apr. 29, 2008).  In *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–92 (9th Cir. 2000), the Ninth Circuit made this clear when it affirmed a district court's refusal to entertain a new theory of liability raised for first time at the summary judgment stage. Applying this discretion, the Court finds it would be inappropriate to entertain CSC's new theories for liability at this stage.  The theories are "materially distinct from the theor[ies] alleged in the [First Amended Complaint], and [they would] require[] an entirely different set of facts to prove or disprove [their] truth." *Saber v. JPMorgan Chase Bank, N.A.*, SACV 13-00812 DOC, 2014 WL 2159395, at *3 (C.D. Cal. May 22, 2014); *accord Gartner, Inc. v. Parikh*, CV 07-2039-PSG, 2008 WL 4601025, at *6 (C.D. Cal. Oct. 14, 2008) (granting summary judgment because plaintiff "(1) failed to plead the additional theory in its FAC and (2) did not make it known during discovery of its intention to pursue recovery under the theory omitted from its FAC").

Accordingly, the Court **GRANTS** summary judgment with regard to CSC's remaining causes of action.

## VII.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**.  Defendant is to lodge a Proposed Judgment consistent with this order no later than September 12, 2014.

**IT IS SO ORDERED.**

:

Initials of Preparer                rf